United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 06, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § |
| | § |
| | § |
| **ARTELLA SOLUTIONS, INC.** | § |
| | §   **Case No. (26-31092-11)** |
| **Debtor.** | §   **(Subchapter V)** |

**SIXTH INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
SETTING FINAL HEARING ON DEBTOR'S USE OF CASH COLLATERAL**
[Relates to Doc. No. 9, 36, 80, 102, 126, 157]

Artella Solutions, Inc. ("**Artella**" or "**Debtor**"), Debtor in the above-captioned chapter 11 case (the "**Bankruptcy Case**") moved this Court on an emergency basis for a preliminary order authorizing use of cash collateral (the "**Motion**"). On February 26, 2026, the Court entered a preliminary order authorizing use of cash collateral ("**Preliminary Order**") [Doc. No. 36] and set a final hearing for March 23, 2026. On March 24, 2026, the Court entered a second interim order authorizing use of cash collateral ("**Second Interim Order**") [Doc. No. 80] and set a final hearing for April 20, 2026. On April 20, 2026, the Court entered a third interim order authorizing use of cash collateral ("**Third Interim Order**") [Doc. No. 102] and set a final hearing for May 15, 2026. On May 15, 2026, the Court entered a fourth interim order authorizing use of cash collateral ("**Fourth Interim Order**") [Doc. No. 126] and set a final hearing for June 5, 2026. On June 5, 2026, the Court entered a fourth interim order authorizing use of cash collateral ("**Fifth Interim Order**") [Doc. No. 157] and set a final hearing for July 6, 2026. In addition, on March 24, 2026, the Court entered, by prior order, that certain *Interim Order Authorizing Debtor to Incur Post-Petition Indebtedness Under 11 U.S.C. §§ 363, 364(c) & (d), and 105* (the "**Interim DIP Order**") [Doc. No. 79], authorizing the Debtor to obtain post-petition financing from Pulse Layer, Inc. (the "**DIP Lender**") pursuant to the DIP Facility[1] described therein. On May 11, 2026, the Court entered a second interim order authorizing the Debtor to obtain post-petition financing from Pulselayer ("**Second Interim DIP Order**") [Doc. No. 120] and set a final hearing for June 5, 2026. On June 5, 2026, the Court entered a third interim order authorizing the Debtor to obtain post-petition financing from Pulselayer ("**Third Interim DIP Order**") [Doc. No. 158] and set a final hearing for July 6 2026. After careful consideration of all matters before it, and the lack of objection to the Motion, ,the Court is of the opinion that the Debtor's estate would incur irreparable injury if the Motion were not granted. Therefore, it is

**ORDERED** that the Motion is hereby granted in accordance with the terms of this Order.

**FURTHER ORDERED** that the Debtor be and is hereby authorized to use cash collateral to pay the expenses shown on the budget attached to the Motion and hereto as

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Order.

**Exhibit "A,"** with up to a 15% total variance, on a rolling basis, on budgeted amounts, from the date this order is signed through the date of the final hearing ("**Approved Budget**"). The Approved Budget shall at all times be consistent with the budget approved pursuant to the DIP Order. To the extent of any conflict between this Order and the DIP Order with respect to the use of cash collateral, the parties shall comply with the DIP Order and shall refer any dispute to the Court for resolution.

FURTHER ORDERED that as adequate protection for the use of cash collateral, the United States Small Business Administration ("**SBA**") and any party holding a valid, perfected prepetition are hereby granted replacement liens (the "**Replacement Liens**") on all post-petition cash collateral and post-petition acquired property to the same extent and priority they possessed as of the Petition Date under applicable non-bankruptcy law and to the extent that cash collateral is actually used subject to the following:

(a) **Subordination to DIP Liens.** The Replacement Liens are hereby expressly subordinated and subject in all respects to the DIP Liens granted to the DIP Lender pursuant to the DIP Order. As set forth in the DIP Order, the DIP Lender has been granted liens senior in priority and superior to any other security interest, mortgage, collateral interest, lien, or claim on or to the Collateral, except as to (i) the lien of the U.S. Small Business Administration arising under its EIDL loan, which shall not be primed and (ii) the lien of ByzfunderWash LLC ("**ByzfunderWash**"), to the extent any such valid lien exists, in any Segregated Receivables, which shall not be treated as unperfected (to the extent a valid lien exists), regardless of any contrary provisions of the DIP Order. "Segregated Receivables" means only those accounts receivable pledged to ByzfunderWash, generated from services provided prior to the Petition Date, excluding amounts subject to the first lien of the SBA or legally restricted from being pledged, or incapable of being subjected to a lien, and existing as of the Petition Date, together with the identifiable proceeds thereof, solely to the extent such receivables constituted valid and perfected collateral of ByzfunderWash as of the Petition Date. For the avoidance of doubt, Segregated Receivables does not include: (i)any accounts receivable not pledged to ByzfunderWash (including receivables subject to the lien of the SBA or receivables legally restricted from being pledged, or incapable of being subjected to a lien), not generated from services provided after the Petition Date or not existing as of the Petition Date; (ii) any proceeds of DIP financing; or (iii) any unencumbered property of the estate. The Debtor has and will continue to use commercially reasonable efforts to account for the proceeds of the Segregated Receivables. Nothwithstanding any contrary provision in this Order or the DIP Order, ByzfunderWash shall have Replacement Liens in post-petition receivables only to the extent of any diminution in the Segregated Receivables existing as of the April 20, 2026 and cash up to $67,000.

(b) The Replacement Liens shall not, under any circumstances, be construed to prime, equal, or impair the DIP Liens, except as expressly provided in this paragraph. The DIP Liens shall attach to all DIP Collateral, including but not

limited to all accounts receivable, and shall be senior and first priority with respect thereto except as expressly provided in this paragraph.

**(c)**     **Exclusions from Replacement Liens.** The Replacement Liens shall not attach to, and adequate protection shall not extend to, any of the following:

(i) Any claims or causes of action under Chapter 5 of the Bankruptcy Code, including without limitation §§ 544, 547, 548, 550, 551, and 553, or any proceeds or recoveries therefrom;

(ii) The DIP Collateral, to the extent such collateral is subject to the DIP Liens under the DIP Order, it being the intent of this Order that the Replacement Liens shall not overlap with, encumber, or otherwise impair the DIP Lender's rights in and to the DIP Collateral in any manner inconsistent with this Order and the DIP Order; and

(iii) Any unencumbered property of the estate on which the DIP Lender has been granted a first-priority lien under § 364(c)(2) of the Bankruptcy Code pursuant to the DIP Order.

**(d)**     **Conflict with DIP Order.** To the extent of any conflict between this Order and the DIP Order with respect to the DIP Liens, Replacement Liens, and the treatment of ByzfunderWash, this Order shall control until the entry of a subsequent order authorizing the Debtor to obtain post-petition financing that supersedes the DIP Order, and the parties shall refer any dispute to the Court for resolution.

**FURTHER ORDERED** that the Debtor expressly reserves all rights, claims, and defenses with respect to the validity, priority, extent, perfection, and enforceability of any alleged liens or interests asserted by ByzfunderWash, including without limitation any rights to challenge, recharacterize, avoid, subordinate, or otherwise contest such interests under applicable law.

For the avoidance of doubt, nothing in this Order shall constitute an admission, stipulation, or finding as to the validity, priority, extent, or perfection of any such alleged liens or interests, and any such liens or interests are expressly deemed disputed.

**FURTHER ORDERED** that the holders of allowed secured claims with a perfected security interest in Cash Collateral, if any, as that term is defined in the Bankruptcy Code, shall be entitled to a Replacement Lien in post-petition accounts receivable, contract rights, and deposit accounts to the same extent allowed and in the same priority as those interests held as of the Petition Date, subject in all events to the subordination provisions set forth above and the priority of the DIP Lien.

**FURTHER ORDERED** that notwithstanding anything herein to the contrary, the Replacement Liens are subject and subordinate to the Carve-Out as defined and described in the DIP Order, which is incorporated herein by reference. For the avoidance of doubt, the Carve-Out includes: (i) fees required to be paid to the Clerk of the Bankruptcy Court; (ii) fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a); (iii) allowed fees of the duly appointed Subchapter V Trustee; and (iv) allowed customary fees and expenses of Debtor's professionals, subject to Court approval.

**FURTHER ORDERED** that notwithstanding any limitations included in this Order, this Order is without prejudice to: (a) any subsequent request by a creditor of the Debtor for modified adequate protection or restriction on cash collateral; (b) a creditor's right to object to impermissible use of cash collateral; and (c) any other right or remedy which may be available to a creditor of the Debtor.

**FURTHER ORDERED** that nothing in this Order shall in any way prejudice the right of the Debtor's creditors to seek modification, extension, or termination of this Order.

**FURTHER ORDERED** that Debtor shall remain current on all tax obligations, including but not limited to, deposit of employee withholdings for income, Social Security taxes and hospital insurance (Medicare) and employer's contribution for Social Security taxes and deposit excise tax, if applicable. Debtor shall file all present and future tax returns as they become due.

**FURTHER ORDERED** that Debtor shall maintain insurance on all tangible assets of the estate and shall provide written evidence of same to the United States Trustee.

**FURTHER ORDERED** that Debtor shall timely file all monthly operating reports required in this case.

**FURTHER ORDERED** that a final hearing before the Honorable Jeffrey P. Norman, United States Bankruptcy Judge, on the continued use of cash collateral is hereby set for August 10, 2026, at 11:30 a.m.(CST) in Bankruptcy Courtroom 403 in the United States Bankruptcy Courthouse, 515 Rusk Street, Houston, Texas 77002. Parties should consult the Court's website for instruction on appearing in court. Debtor must serve a copy of this Order on all parties entitled to notice of the hearing and file a certificate of service with the Clerk's Office no later than July 10, 2026.

Signed:

Signed: July 06, 2026

Jeffrey P. Norman
United States Bankruptcy Judge

# ARTELLA SOLUTIONS, INC.
## Monthly Budget
Chapter 11 Reorganization

**Petition Date: February 19, 2026**

| | Budget | | | | |
|---|---|---|---|---|---|
| | **1** | **2** | | **3** | **TOTAL** |
| Week Ending | 7/10/2026 | 7/17/2026 | 7/24/2026 | 7/31/2026 | |
| *Payroll Week* | *Emp* | *Lead* | *Emp* | *Lead* | |
| **BEGINNING CASH** | | | | | |
| Cash Balance | 156,800.61 | 160,346.61 | 46,716.61 | 127,748.61 | |
| | | | | | |
| **CASH SOURCES** | | | | | |
| Operating Receipts | 125,000.00 | 70,000.00 | 190,000.00 | 50,000.00 | 435,000.00 |
| Refunds - Insurance/Patients | | | (2,500.00) | | (2,500.00) |
| DIP Draw * | | | 75,000.00 | | 75,000.00 |
| **TOTAL SOURCES** | **125,000.00** | **70,000.00** | **262,500.00** | **50,000.00** | **507,500.00** |
| **TOTAL CASH BALANCE** | **281,800.61** | **230,346.61** | **309,216.61** | **177,748.61** | |
| | | | | | |
| **DISBURSEMENTS** | | | | | |
| **PAYROLL** | | | | | |
| Employee Payroll (bi-weekly) | 80,000.00 | | 85,000.00 | | 165,000.00 |
| Leadership Payroll -(bi-weekly) | | 18,600.00 | | 18,000.00 | 36,600.00 |
| Commissions | | 40,000.00 | | | 40,000.00 |
| *Total Payroll:* | **80,000.00** | **58,600.00** | **85,000.00** | **18,000.00** | **241,600.00** |
| **CRITICAL VENDORS** | | | | | |
| Vendera Mobile | | | 26,000.00 | | 26,000.00 |
| Vendera Phones | | 40,000.00 | | | 40,000.00 |
| Phone License Fee | | | | 20,000.00 | 20,000.00 |
| Flipside | | | 33,000.00 | | 33,000.00 |
| AWS | | 24,000.00 | | | 24,000.00 |
| Verizon | | | | 13,300.00 | 13,300.00 |
| Medical Algorithmics | | | | 31,500.00 | 31,500.00 |
| B-Secur | | | | 3,000.00 | 3,000.00 |
| Vivalink (COD) | 11,475.00 | 25,000.00 | 11,475.00 | 25,000.00 | 72,950.00 |
| Other Supplies (Amazon) | 600.00 | | 600.00 | | 1,200.00 |
| *Total Vendors:* | **12,075.00** | **89,000.00** | **71,075.00** | **92,800.00** | **264,950.00** |
| | | | | | |
| **OVERHEAD** | | | | | |
| Rent - 710 Post Oak | 10,000.00 | | | | 10,000.00 |
| BCBS Health Insurance | | | | 8,300.00 | 8,300.00 |
| Chubb | 2,500.00 | | | | 2,500.00 |
| neoRhino IT | 5,000.00 | | | | 5,000.00 |
| Ring Central | 1,600.00 | | | | 1,600.00 |
| Athena Health | | | 6,500.00 | | 6,500.00 |
| SBA Loan | | | | 731.00 | 731.00 |
| Employee Reimbursements | | 5,000.00 | | | 5,000.00 |
| Medical Director | | | | 3,000.00 | 3,000.00 |
| Supplies & Miscellaneous | 279.00 | 1,030.00 | 4,393.00 | 348.00 | 6,050.00 |
| *Total Overhead:* | **19,379.00** | **6,030.00** | **10,893.00** | **12,379.00** | **48,681.00** |

EXHIBIT

A

| | | | | | |
|---|---|---|---|---|---|
| **CONTRACT SERVICES** | | | | | |
| Heather (CPA) | | | 3,500.00 | | 3,500.00 |
| Jeff Shulse (Contractor) | | 3,000.00 | | | 3,000.00 |
| Tony Otten (Contractor) | | 3,000.00 | | | 3,000.00 |
| Board Members | | | 1,000.00 | | 1,000.00 |
| *Total Contract Services:* | *-* | *6,000.00* | *4,500.00* | *-* | *10,500.00* |
| | | | | | |
| **PROFESSIONAL FEES** | | | | | |
| Melissa Haselden | | 20,000.00 | | | 20,000.00 |
| Chris Osborne (Attorney) | | 2,000.00 | | | 2,000.00 |
| Auction or Appraisal | 10,000.00 | | | | 10,000.00 |
| CPA (Tax Filing) | | | 10,000.00 | | 10,000.00 |
| *Total Professional Fees:* | *10,000.00* | *22,000.00* | *10,000.00* | *-* | *42,000.00* |
| | | | | | |
| **SUBCHAPTER V TRUSTEE** | | 2,000.00 | | | 2,000.00 |
| **TOTAL DISBURSEMENTS** | 121,454.00 | 183,630.00 | 181,468.00 | 123,179.00 | 609,731.00 |
| | | | | | |
| **ENDING CASH** | 160,346.61 | 46,716.61 | 127,748.61 | 54,569.61 | |

* The Debtor has been authorized under prior orders and budgets to draw up to $250,000 from the DIP facility. As of July 1, 2026, the Debtor has drawn $225,000 of the approved amount.  The current budget includes a draw of the remaining DIP facility, plus the the remaining $25,000 that has been previously authorized.