United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 06, 2026

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **ARTELLA SOLUTIONS, INC.** | § | |
| | § | **Case No. (26-31092-11)** |
| **Debtor.** | § | **(Subchapter V)** |

## FOURTH INTERIM ORDER AUTHORIZING DEBTOR TO INCUR POST-PETITION INDEBTEDNESS UNDER 11 U.S.C. §§ 363, 364(C) & (D), AND 105, AND SETTING FINAL HEARING
[Related to Doc. Nos. 50 , 79, 120, 158]

Artella Solutions, Inc. ("**Artella**" or "**Debtor**"), debtor and debtor-in-possession in the above-captioned Subchapter V Chapter 11 case, has moved this Court on an emergency basis for an interim order authorizing the incurrence of post-petition financing under 11 U.S.C. §§ 363, 364, and 105 [Docket No. 50] (the "**Motion**"). On March 18, 2026, Sepand and Lila Moshiri (collectively "**Moshiri**") filed an Objection to the Motion at Docket No. 59 (the "**Objection**"). Subsequently, the Debtor, Moshiri, Pulselayer, Inc. ("**DIP Lender**"), collectively with Debtor and Moshiri, the "**Parties**") reached an agreement regarding interim funding under the Motion and on March 24, 2026, the Court entered the agreed Interim Order Authorizing Debtor to Incur Post-Petition Indebtedness Under 11 U.S.C. §§ 363, 364(C) & (D), and 105, and Setting Final Hearing ("**First Interim Order**") [Docket No. 79] providing for interim post-petition funding through April 17, 2026. On May 11, 2026, the Court entered the agreed Second Interim Order Authorizing Debtor to Incur Post-Petition Indebtedness Under 11 U.S.C. §§ 363, 364(C) & (D), and 105, and Setting Final Hearing ("**Second Interim Order**") [Docket No. 120]. On June 5, 2026, the Court entered the agreed Third Interim Order Authorizing Debtor to Incur Post-Petition Indebtedness Under 11 U.S.C. §§ 363, 364(C) & (D), and 105, and Setting Final Hearing ("**Third Interim Order**") [Docket No. 158] The Parties have reached an agreement to authorized additional post-petition funding through July 31, 2026 ("**Fourth Interim Order**"). After careful consideration, the Court is of the opinion that the Fourth Interim Order is meritorious and that estate would incur irreparable injury if the Motion is not granted on an interim basis.

**THEREFORE, IT IS ORDERED THAT:**

1. **Authorization to Incur Additional Post-Petition Financing.** Artella is hereby authorized to incur additional post-petition financing with DIP Lender in accordance with the DIP Facility and DIP Term Sheet filed as **Exhibit "A" to the First Interim Order**, as modified herein.

2. **Interim Draw.** The Debtor is authorized to immediately draw under the DIP Facility, up to $75,000.00 ("**Fourth Interim Draw**") in additional post-petition financing, inclusive of $25,000 approved in the Third Interim Order, to pay expenses in accordance with the

budget attached hereto as **Exhibit "B"**, ( the "**Approved Budget**"), with up to a **15% variance** per line item, so long as the amount drawn does not exceed the total amount for each weekly period in the Approved Budget.  .

3. **DIP Liens and Superpriority Claim.** (a) Pursuant to § 364(c)(1), debt incurred by the Debtor under the DIP Facility is hereby allowed as a superpriority administrative expense claim, with priority over all administrative expense claims and unsecured claims against the Debtor or its estate, subject only to the Carve-Out described in paragraph 4 below; (b) To the extent permissible under the Bankruptcy Code, pursuant to § 364(d)(1), the DIP Lender is hereby granted DIP Liens senior in priority and superior to any security interest, mortgage, collateral interest, lien, or claim on or to any of the Collateral; **provided, however, that the DIP Liens shall not prime or be superior to any ad valorem tax liens and the lien of the U.S. Small Business Administration** arising under its EIDL loan. As to any piece of Collateral for which priming liens are not available, the DIP Lender is granted a junior lien under § 364(c)(3), and a sole lien as to any unencumbered Collateral pursuant to § 364(c)(2); (c) the lien of ByzfunderWash LLC ("**ByzfunderWash**"), to the extent any such valid lien exists, in any Segregated Receivables, which shall not be treated as unperfected (to the extent a valid lien exists), regardless of any contrary provisions of the DIP Order. "Segregated Receivables" means only those accounts receivable pledged to ByzfunderWash, generated from services provided prior to the Petition Date, excluding amounts subject to the first lien of the SBA or legally restricted from being pledged, or incapable of being subjected to a lien, and existing as of the Petition Date, together with the identifiable proceeds thereof, solely to the extent such receivables constituted valid and perfected collateral of ByzfunderWash as of the Petition Date. For the avoidance of doubt, Segregated Receivables does not include: (i)any accounts receivable not pledged to ByzfunderWash (including receivables subject to the lien of the SBA or receivables legally restricted from being pledged, or incapable of being subjected to a lien), not generated from services provided after the Petition Date or not existing as of the Petition Date; (ii) any proceeds of DIP financing; or (iii) any unencumbered property of the estate.  The Debtor has and will continue to use commercially reasonable efforts to account for the proceeds of the Segregated Receivables. Nothwithstanding any contrary provision in this Order or any cash collateral order that is entered, ByzfunderWash shall have Replacement Liens in post-petition receivables only to the extent of any diminution in the Segregated Receivables existing as of April 20, 2026 and cash up to $67,000. The Debtor reserves all rights to challenge the validity, extent, and enforceability of any liens asserted by ByzfunderWash; (d) The Collateral includes all present and after-acquired property of the Debtor, including accounts, accounts receivable, inventory, equipment, intellectual property, and general intangibles, but **excluding** any claims or causes of action under Chapter 5 of the Bankruptcy Code (including §§ 544, 547, 548, 550, 551, and 553) and any proceeds or recoveries therefrom.

4. **Carve-Out.** Notwithstanding the DIP Liens and superpriority claim, the DIP Collateral shall be subject to a carve-out (the "**Carve-Out**") for: (i) fees required to be paid to the Clerk of the Bankruptcy Court; (ii) fees of the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a); (iii) allowed fees of the duly appointed Subchapter V Trustee; and (iv) allowed customary fees and expenses of Debtor's professionals, subject to Court approval.

5. **Permitted Use of DIP Proceeds.** Except as otherwise provided herein, the Debtor is authorized and directed to use the proceeds of DIP Loans solely: (a) in accordance with the Approved Budget, which shall at all times be consistent with the budgets approved pursuant to the Cash Collateral Order and any subsequent cash collateral orders; to the extent of any conflict between the cash collateral budget and this DIP budget, the more restrictive provision shall control; (b) to pay expenses enumerated in the Approved Budget as and when such expenses become due and payable, provided, however, that fees payable to estate professionals may only be paid upon approval by this Court pursuant to a further order; and (c) to pay interest and fees owed to the DIP Lender in connection with the DIP Facility, provided that such amounts have been allowed by a further order of this Court.

6. **Modification of DIP Term Sheet.** The DIP Term Sheet shall be modified as follows: (i) allowed Administrative claims acquired by the DIP Lender shall only be converted to DIP Obligations upon notice and Court approval; (ii) the automatic stay pursuant to Bankruptcy Code section 362 shall terminate with respect to the DIP Lender's exercise of its rights and remedies only upon further order of the Court; and, (iii) the Milestones and Maturity Date in the DIP Term Sheet shall provide the Debtor with up to 180 days to confirm a plan or consummate a sale of substantially all of its assets under Section 363 of the Bankruptcy Code.

7. **Relationship to Cash Collateral Order.** Nothing in this Interim Order shall be construed to modify, supersede, or otherwise affect the adequate protection provisions of the Cash Collateral Order, which shall remain in full force and effect. The Replacement Liens granted to the SBA pursuant to the Cash Collateral Order are hereby preserved and shall continue to apply to all post-petition cash collateral and post-petition acquired property to the same extent and in the same priority as those interests held as of the Petition Date. The Replacement Liens shall not attach to any avoidance actions under Chapter 5 of the Bankruptcy Code or any proceeds thereof.

8. **Bank Account Authorization.** The financial institutions where the Debtor's bank accounts are located: (a) are authorized to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such items are dated prior to, on, or subsequent to the Petition Date; and (b) have no duty to independently inquire as to whether such payments are authorized by an order of this Court. No financial

institution that implements reasonable handling procedures and honors a pre-petition item in good faith, or as a result of an innocent mistake made despite such procedures, shall be deemed liable to the Debtor or its estate.

9. **Modification of Automatic Stay.** Except as otherwise set forth herein, the automatic stay of § 362 of the Bankruptcy Code is hereby modified to the extent necessary to effectuate the provisions of this Interim Order and the Definitive Financing Documents.

10. **Ongoing Debtor Obligations.** The Debtor shall: (a) remain current on all tax obligations, including deposit of employee withholdings and employer contributions; (b) file all present and future tax returns as they become due; (c) maintain insurance on all tangible assets of the estate and provide written evidence of same to the United States Trustee; and (d) timely file all monthly operating reports required in this case.

11. **Reservation of Rights**. Moshiri hereby reserves all rights in connection with the Motion, any plan proposed by the Debtor or any other party, and their claims against the Debtor or any non-debtor(s). In addition, Moshiri reserves all rights in and under the Bankruptcy Code, and applicable law, including, but not limited to, the right to amend or supplement the Objection based on any material changes in the representations made herein, or any modifications to the Motion made by the Debtor prior to any final hearing on the Motion, or insofar as any plan for which the Debtor seeks confirmation fails to comport with the terms of the mediated settlement agreement between the Moshiri and the Debtor, et al., as the evidence then available may allow.

12. **Final Hearing.** A final hearing on the Debtor's Motion is hereby scheduled for August 10, 2026 at 11:30 a.m. (CST) in Courtroom 403, United States Bankruptcy Courthouse, 515 Rusk Street, Houston, Texas 77002. Objections to the entry of a final order approving the Motion shall be filed by no later than August 3, 2026. The Debtor shall serve a copy of this Interim Order on all parties entitled to notice and file a certificate of service with the Clerk's Office no later than July 10 , 2026. PParties should consult the Court's website for instruction on appearing in court.

Signed:

Signed: July 06, 2026

Jeffrey P. Norman
United States Bankruptcy Judge

AGREED:

**HASELDEN FARROW, PLLC**

By: /s/    Melissa A. Haselden
MELISSA A. HASELDEN
State Bar No. 00794778
708 Main St, 10th Floor
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
mhaselden@haseldenfarrow.com
Attorneys for Debtor and Debtor in Possession
Artella Solutions, Inc.


**BAKER, DONELSON, BEARMAN, CALDWELL, & BERKOWITZ. PC**

By: *Sean B. Davis with permission by /s/ Melissa A. Haselden*
SEAN B. DAVIS
Texas Bar No. 24069583
1301 McKinney Street,  Suite 3700
Houston, TX 77010
Telephone: (713) 650-9700
Facsimile: (713) 650-9701
sbdavis@bakerdonelson.com
Attorneys Sepand Moshiri and Lila Moshiri


**NATHAN SOMMERS GIBSON DILLON PC**

By: *Iaian L.C. Kennedy with permission by /s/ Melissa A. Haselden*
IAIN L.C. KENNEDY
Texas Bar No. 24068094
Federal ID No. 1066018
1400 Post Oak Boulevard, Suite 300
Houston, Texas 77056
713.960.0303 - phone
713.892.4800 – fax
E-Mail: ikennedy@nathansommers.com
Attorneys for Pulselayer, Inc.


**CHRIS QUINN, SUBCHAPTER V TRUSTEE**

By: *Chris Quinn with permission by /s/  Melissa A. Haselden*          .
26414 COTTAGE CYPRESS LANE
CYPRESS, TX 77433
Email : chris.quinn2021@outlook.com
PH : (713) 498-8500

**EXHIBIT "B"**


**BUDGET**

# ARTELLA SOLUTIONS, INC.

**Monthly Budget**

Chapter 11 Reorganization

**Petition Date: February 19, 2026**

| | Budget | | | | |
|---|---|---|---|---|---|
| | **1** | **2** | | **3** | **TOTAL** |
| Week Ending | 7/10/2026 | 7/17/2026 | 7/24/2026 | 7/31/2026 | |
| *Payroll Week* | *Emp* | *Lead* | *Emp* | *Lead* | |
| **BEGINNING CASH** | | | | | |
| Cash Balance | 156,800.61 | 160,346.61 | 46,716.61 | 127,748.61 | |
| | | | | | |
| **CASH SOURCES** | | | | | |
| Operating Receipts | 125,000.00 | 70,000.00 | 190,000.00 | 50,000.00 | 435,000.00 |
| Refunds - Insurance/Patients | | | (2,500.00) | | (2,500.00) |
| DIP Draw * | | | 75,000.00 | | 75,000.00 |
| **TOTAL SOURCES** | **125,000.00** | **70,000.00** | **262,500.00** | **50,000.00** | **507,500.00** |
| **TOTAL CASH BALANCE** | **281,800.61** | **230,346.61** | **309,216.61** | **177,748.61** | |
| | | | | | |
| **DISBURSEMENTS** | | | | | |
| **PAYROLL** | | | | | |
| Employee Payroll (bi-weekly) | 80,000.00 | | 85,000.00 | | 165,000.00 |
| Leadership Payroll -(bi-weekly) | | 18,600.00 | | 18,000.00 | 36,600.00 |
| Commissions | | 40,000.00 | | | 40,000.00 |
| *Total Payroll:* | *80,000.00* | *58,600.00* | *85,000.00* | *18,000.00* | *241,600.00* |
| **CRITICAL VENDORS** | | | | | |
| Vendera Mobile | | | 26,000.00 | | 26,000.00 |
| Vendera Phones | | 40,000.00 | | | 40,000.00 |
| Phone License Fee | | | | 20,000.00 | 20,000.00 |
| Flipside | | | 33,000.00 | | 33,000.00 |
| AWS | | 24,000.00 | | | 24,000.00 |
| Verizon | | | | 13,300.00 | 13,300.00 |
| Medical Algorithmics | | | | 31,500.00 | 31,500.00 |
| B-Secur | | | | 3,000.00 | 3,000.00 |
| Vivalink (COD) | 11,475.00 | 25,000.00 | 11,475.00 | 25,000.00 | 72,950.00 |
| Other Supplies (Amazon) | 600.00 | | 600.00 | | 1,200.00 |
| *Total Vendors:* | *12,075.00* | *89,000.00* | *71,075.00* | *92,800.00* | *264,950.00* |
| | | | | | |
| **OVERHEAD** | | | | | |
| Rent - 710 Post Oak | 10,000.00 | | | | 10,000.00 |
| BCBS Health Insurance | | | | 8,300.00 | 8,300.00 |
| Chubb | 2,500.00 | | | | 2,500.00 |
| neoRhino IT | 5,000.00 | | | | 5,000.00 |
| Ring Central | 1,600.00 | | | | 1,600.00 |
| Athena Health | | | 6,500.00 | | 6,500.00 |
| SBA Loan | | | | 731.00 | 731.00 |
| Employee Reimbursements | | 5,000.00 | | | 5,000.00 |
| Medical Director | | | | 3,000.00 | 3,000.00 |
| Supplies & Miscellaneous | 279.00 | 1,030.00 | 4,393.00 | 348.00 | 6,050.00 |
| *Total Overhead:* | *19,379.00* | *6,030.00* | *10,893.00* | *12,379.00* | *48,681.00* |

**EXHIBIT**

**B**

exhibitsticker.com

| | | | | | |
|---|---|---|---|---|---|
| **CONTRACT SERVICES** | | | | | |
| Heather (CPA) | | | 3,500.00 | | 3,500.00 |
| Jeff Shulse (Contractor) | | 3,000.00 | | | 3,000.00 |
| Tony Otten (Contractor) | | 3,000.00 | | | 3,000.00 |
| Board Members | | | 1,000.00 | | 1,000.00 |
| *Total Contract Services:* | *-* | *6,000.00* | *4,500.00* | *-* | *10,500.00* |
| | | | | | |
| **PROFESSIONAL FEES** | | | | | |
| Melissa Haselden | | 20,000.00 | | | 20,000.00 |
| Chris Osborne (Attorney) | | 2,000.00 | | | 2,000.00 |
| Auction or Appraisal | 10,000.00 | | | | 10,000.00 |
| CPA (Tax Filing) | | | 10,000.00 | | 10,000.00 |
| *Total Professional Fees:* | *10,000.00* | *22,000.00* | *10,000.00* | *-* | *42,000.00* |
| | | | | | |
| **SUBCHAPTER V TRUSTEE** | | 2,000.00 | | | 2,000.00 |
| **TOTAL DISBURSEMENTS** | 121,454.00 | 183,630.00 | 181,468.00 | 123,179.00 | 609,731.00 |
| | | | | | |
| **ENDING CASH** | 160,346.61 | 46,716.61 | 127,748.61 | 54,569.61 | |

\* The Debtor has been authorized under prior orders and budgets to draw up to $250,000 from the DIP facility. As of July 1, 2026, the Debtor has drawn $225,000 of the approved amount.  The current budget includes a draw of the remaining DIP facility, plus the the remaining $25,000 that has been previously authorized.